UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

KYLE OSBORNE,                                              Civ. No. 2:11-cv-00080-SU

                                Plaintiff,

                v.                              FINDINGS AND RECOMMENDATION

CITY OF BURNS, OREGON, a Municipal
Corporation, LEN VOHS, DON MUNKERS,
RANDY COOK, DON HOKE, and CRAIG
LaFOLLETTE,

                                Defendants.
_____

SULLIVAN, Magistrate Judge:

        Plaintiff Kyle Osborne filed this action against the City of Burns ("City") and against City

Manager Don Munkers, Mayor Len Vohs, Councilor Craig LaFollette, Councilor Don Hoke, and

Police Chief Randy Cook (collectively, "defendants") in the Harney County Circuit Court,

alleging an Open Meetings Law violation and a statutory tort based on three state criminal statutes

(Official Misconduct in the first and second degrees and Interference with Government

Administration).  The complaint further alleged violations of the Civil Rights Act, 42 U.S.C. §§

Page 1 - FINDINGS AND RECOMMENDATION

1983 and 1988.  Based on the federal claims, defendants removed the suit to this Court on January

21, 2011.  This Court has federal question jurisdiction over the federal claims pursuant to 28

U.S.C. § 1331 and supplemental jurisdiction over the remaining state claims pursuant to 28

U.S.C. § 1367.  Defendants filed a motion for summary judgment on all claims.  For the reasons

set forth below, defendants' motion should be granted, in part, and denied, in part.

## FACTUAL BACKGROUND

Plaintiff is a rancher who resides in the City of Burns, Oregon.  Declaration of Gerald

Warren, Ex. 1, Deposition of Kyle Osborne ("Osborne Dep.") 4:22-23.  Plaintiff maintained

several lease contracts with the City to graze his cattle at the City airport.  *Id.* at 7:16-19.

Throughout 2009, while waiting to renew his lease, he continued to graze his cattle under

temporary permission from  Munkers, who served at all relevant times as the Burns City Manager.

*Id.* at 17:6-7.  In December 2009, plaintiff received a letter from the City suggesting that he might

not be able to continue grazing cattle at the airport. *Id.* at 17:22-25.  This conflict appears to have

arisen from pressure on the City by the Federal Aviation Administration to keep cattle away from

the airport runway area. Declaration of Don Munkers ("Munkers Decl.") 2.

In January 2010, plaintiff's concern about his grazing lease prompted him to begin

attending the bi-weekly city council meetings, which he attended on a regular basis.  Osborne

Dep. 18:22-25.  In Spring 2010, the City informed plaintiff that it would no longer permit him to

graze his cattle at the airport.  *Id.* at 7:16-25.  Plaintiff alleges this decision by the City resulted in

financial hardship.  *Id.*  Plaintiff recalls attending between one-third and two-thirds of the city

council meetings that occurred between December 2009 and Spring 2010.  *Id.* at 19:2-3.  Plaintiff

does not recall speaking or participating in the meetings, *Id.* at 12, though Mayor Vohs alleges

that plaintiff sometimes shook his head or made disapproving facial expressions, most of which

were directed at Munkers. Decl. of Len Vohs ("Vohs Decl.") 2.

Plaintiff attended the September 22, 2010, city council meeting.  Osborne Dep. 28:10.

During that meeting, the topic of airport-related complications re-emerged in the form of a

complaint by City resident and pilot Matt Davies.  *Id.* 24:21-25.  Davies reported that airport

closures had caused him financial hardship. *Id.*  At the conclusion of the meeting, plaintiff

approached Councilor Hoke and Linda Johnson (another city council member not named as a

defendant) and presented each of them with what plaintiff describes as a "list of improvements"[1]

he completed at the airport. *Id.* at 26:8-13.  Munkers, who was nearby, looked at plaintiff in a way

that "just hit [plaintiff] wrong." *Id.* at 26:14-17.  Plaintiff allegedly then made several negative

comments about the city council members and their decisions, although he did not make any

threats.[2] *Id.* at 26:18-20.  As plaintiff left the meeting, a friend informed him that Munkers had

voiced objections to plaintiff's comments. *Id.* at 28:2-9.  In addition to Hoke and Munkers, Vohs

and LaFollette were also present at this meeting.  *See* Vohs Decl. 2; Declaration of Craig

LaFollette ("LaFollette Decl.") 2.  Cook, the City's police chief at all relevant times, was not

present at the meeting. Declaration of Randy Cook ("Cook Decl.") 2.

Plaintiff did not attend the next meeting on October 13, 2010, although he did attend the

---

[1] The record does not provide any additional detail about these improvements or why  plaintiff allegedly made these improvements.

[2] Plaintiff admits that when he found out at an earlier meeting that his lease would not be renewed, he stated to Munkers, "You don't care about my family . . . I don't care about your family." Osborne Dep. 38:11.  He denies that this was intended as a threat or that he made any further comments on the topic at any point. *Id.* at 26:21-22.

following meeting on October 27.  Osborne Dep. 30:12-15.  Plaintiff arrived approximately five

minutes early and observed Munkers and Vohs exit the meeting room through two separate doors.

*Id.* at 31:13-20. After two or three minutes, they returned, followed by Cook, the peace officer on-

duty at that meeting. *Id.* at 31:19-21. Cook, who was roughly five feet from plaintiff, made a hand

gesture that signaled to plaintiff that Cook wanted to talk to him outside in the foyer; plaintiff

complied. *Id.*

Plaintiff alleges that the following conversations occurred:

> The police chief said, "Because of something that you said at a previous meeting, that
> [sic] they do not want you in this meeting." And I said, "Oh, really?" And I said, "It's a
> free country." And he says, "I know."  And he says, "I don't know what was said, but if
> you go back in and sit down, I'll have to arrest you for trespass."  And I said, "Oh, really?"
> And so I said that I need to go back in and get my folder.  And he said, "Okay, go ahead,
> but don't stay."
>  So I went in and picked up my folder, and Scott Franklin says, "Where are you going?"
> And I said, "They're kicking me out." So I picked up my folder and I walked out and the
> police chief followed me right out and shut the door and I left.

Osborne Dep. 34:13-25, 35:1. Cook disputes the claim that he required plaintiff to leave.  Cook

Decl. 3.  Cook states that during the encounter with Mr. Osborne, he did not instruct Mr. Osborne

to leave; rather, he explained the laws regarding disorderly conduct, harassment, and trespass, and

indicated that plaintiff could be subject to punishment under these laws if he behaved disruptively

during the meeting.  *Id.*  He further states that plaintiff then left voluntarily. *Id.*

Vohs states he did not request that Cook remove plaintiff from the meeting. Vohs Decl. 3.

Rather, concerned that plaintiff's behavior would escalate, he told Cook to "talk to Mr. Osborne

and make sure this behavior did not continue." *Id*. at 3. Cook states that Vohs had asked him to

"have a conversation with Mr. Osborne and see if he would voluntarily agree to not attend the meeting that night." Cook Decl. 2.

Councilor Linda Johnson appears to have expressed dissatisfaction that Mr. Osborne was asked to leave the meeting. Declaration of Don Hoke ("Hoke Decl.") 2; LaFollette Decl. 3. However, she was not in the foyer area to hear the conversation between Cook and plaintiff. Osborne Dep. 23:7-16. Plaintiff alludes to other evidence that could refute defendants' accounts, stating that an individual named Scott Franklin attended the meeting, asked about plaintiff, and received a statement from Vohs indicating that Vohs "threw" plaintiff out of the meeting. *Id.* at 43:11-13. Plaintiff has failed, however, to offer any evidence to support Vohs's alleged admission to Franklin.

The remaining defendants, none of whom were parties to the conversation between Cook and plaintiff, allege that their involvement is peripheral at most: LaFollette states he was aware that Vohs planned to involve Cook in a discussion with plaintiff, but he does not have personal knowledge of the content of the conversation. LaFollette Decl. 2. Munkers and Hoke state they were not parties to any conversation with Vohs prior to the disputed conversation and they did not have any knowledge of its content until later. Munkers Decl. 3; Hoke Decl. 2.

The minutes of the October 27 meeting reveal that two substantive votes took place. Munkers Decl., Attach. 1 ("Minutes.") 2. The first vote, described as a "management decision," carried a motion to allow City Manager Munkers to extend an airport manager contract to an applicant described as "applicant B." *Id*. The second vote carried a motion to adopt various cemetery modifications recommended by the cemetery committee. *Id.* at 3.

Plaintiff admits he did not know anything about what the City Council did at the October 27 meeting and that he had no understanding of the decisions he has asked to be reversed in his lawsuit. Osborne Dep. 38:16-25.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All material facts are resolved in a light most favorable to the nonmoving party. *Id*. at 331. The court must accept all evidence and make all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

Plaintiff has sued the City as well as city council members and individual employees of the City. Plaintiff has alleged that all individual defendants have been sued in their official capacities. Pl.'s Compl. ¶ ¶ 3,4,5. Plaintiff's filings are silent, however, regarding whether the local official defendants have been sued in their individual capacities. Plaintiff has alleged that "all named defendants" deprived plaintiff of his constitutional rights. Pl.'s Compl. ¶ 37. Plaintiff's prayer for relief also seeks relief "against all named defendants, jointly and severally" for violations of § 1983. Pl.'s Compl. at 8.

A pleading that alleges a violation under §1983 may name defendants in an individual capacity, an official capacity, or both. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). An

individual capacity suit seeks to impose personal liability upon a government official, whereas an official capacity suit is brought against the government entity itself. *Id.* at 165-166. The court must look to the nature of the proceedings to determine whether a plaintiff has brought suit against defendants in an official capacity, an individual capacity, or both. *Id.* at 167 n.14. The Ninth Circuit holds that where a caption is silent as to capacity, the guiding inquiry is what capacity or capacities the "basis of the claims asserted and nature of relief sought" imply.[3] *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990) (quoting *Cent. Reserve Life Ins. Co. v. Struve*, 852 F.2d 1158, 1161 (9th Cir. 1988)). *See also Bishop v. Reed*, 940 F.2d 1533, 1 (9th Cir. 1991) (complaint seeking damages implies that the suit names defendants in an individual capacity if Eleventh Amendment bars official capacity damages).

Here, the complaint names all defendants in their official capacities. In addition, the complaint implies an action against the defendants in their individual capacities based on the nature of the claims for relief. *See Price*, 928 F.2d at 828. Plaintiff's complaint alleges that defendants Vohs, Hoke, and LaFollette are jointly and severally liable for violating the Open Meetings Law and that all named defendants are jointly and severally liable for the remaining claims. Pl.'s Compl. 8-9. Since all of these claims arise out of an incident in which all defendants were acting as officials for the same municipality, an official capacity suit against the individuals would be a suit against the City. *See Monell v. Dept. of Soc. Serv. of City of New*

---

[3] While *Price* did not expressly limit its holding to cases where the caption is silent, a caption that specifies one capacity may bar a plaintiff from later asserting a different capacity. *See Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1285 (9th Cir. 1994) (where a complaint specifically proceeded against one defendant in his individual capacity and was silent as to the other five, those five defendants were entitled to assume they were not sued in their individual capacities; plaintiff was therefore barred from proceeding against them as individuals).

*York,* 436 U.S. 658, 690 n.55 (1978); *Graham,* 473 U.S. at 165. Thus, the "joint and several" language in plaintiff's complaint is sufficient to imply that the individual defendants have also been sued in their individual capacities.

## I. Federal Claims under § 1983

### A. Individual liability

Plaintiff alleges that all defendants violated his federal constitutional rights under color of state law in violation of the Civil Rights Act, 42 U.S.C. §§ 1983 *et seq.*[4] Defendants argue that no constitutional violations occurred and therefore that all defendants are entitled to summary judgment on this claim.

---

[4] Specifically, the complaint alleges: "The Defendants' actions as alleged constituted an unlawful deprivation of Plaintiffs' rights without due process of law in violation of the First, Fourth, Fifth and Fourteenth Amendment [sic] to the United States Constitution and more specifically by:
(a) by depriving plaintiff of his liberty, speech, right to peaceable assembly all without due process of law, by taking him excluding him [sic] from a public meeting under a threat of arrest for criminal trespass;
(b) by threatening an arrest for criminal trespass without due process of law;
(c) by conspiring for the purpose of impeding and hindering the due course of justice, with the intent to deny Plaintiff equal protection of laws;
(d) by refusing or neglecting to prevent such deprivations and denials to plaintiff, thereby depriving plaintiff of his rights, privileges, and immunities as guaranteed by First, Fourth and Fourteenth Amendment [sic] to the United States Constitution;
(e) by unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,
(f) by unlawfully and maliciously threatening the arrest and prosecution of a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities, (g) by conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the State of Oregon; and
(d) [sic] by otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities." Pl.'s Compl. ¶ 35.

Defendants' summary judgment motion addresses the constitutional claims as they understood them from the allegations in the complaint. Plaintiff responds to defendants' motion regarding three violations of § 1983 as follows: (1) a First Amendment violation, (2) a Fourteenth Amendment "class of one" equal protection violation; and (3) a Fourth Amendment unreasonable seizure.[5]

### 1. First Amendment Violation

Plaintiff alleges that defendants violated his First Amendment rights by removing him from a meeting that he had not disrupted. Pl.'s Mem. Opp. Summ. J. 9-11. A city official is not entitled to prevent an individual from attending a city council meeting that is open to the public unless the person disturbs the meeting. *White v. City of Norwalk*, 900 F.2d 1421 (9th Cir. 1990). The Supreme Court has explained that "in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969). In the Ninth Circuit, a city council meeting that is open to the public constitutes a "limited public forum" for First Amendment purposes. *Norwalk*, 900 F.2d at 1425. Ninth Circuit case law has embraced the principle that "[e]ven in a limited public forum like a city council meeting, the First Amendment tightly constrains the government's power; speakers may be removed only if they are actually disruptive." *Norse v. City of Santa Cruz*, 629 F.3d 966, 979 (9th Cir. 2010) (Kozinski, J., concurring), *cert denied*, 2011 WL 4530331 (Oct. 3, 2011). *See also Norwalk*, 900 F.2d at 1426 (ordinance is not facially

---

[5] Defendants address what they understood to be alleged in plaintiff's complaint, including procedural and substantive due process claims, a Fifth Amendment claim, and a conspiracy claim. However, plaintiff does not present any argument in support of these claims and, therefore, the court deems them abandoned. *Acasta-Huerta v. Estelle*, 7 F.3d 139,144 (9th Cir. 1993)

overbroad so long as it only permits city council officials to eject a person who disturbs or impedes the meeting); *Norse*, 629 F.3d at 976 (reading *Norwalk* to require actual disturbance); *Dehne v. City of Reno*, 222 Fed.Appx. 560, 562 (9th Cir. 2007) ("removing an individual from a public meeting does not violate the Constitution *provided that* the individual is sufficiently disruptive and is not removed because of his or her views") (emphasis added); *Felton v. Griffin*, 185 Fed.Appx. 700, 702 (9th Cir. 2006) (although ejection ordinance "*could* be read to bar too much protected speech," it is constitutional on its face if read only to apply where an individual actually disturbs or impedes a meeting; it is constitutional as applied because plaintiff did in fact disturb the meeting) (emphasis in original).

Here, the record contains no evidence that an actual disturbance prompted plaintiff's exclusion from the city council meeting. In fact, plaintiff could not have disturbed the October 27 meeting because it is undisputed that his alleged removal took place prior to the meeting. Further, plaintiff's comments on September 22 did not disturb that city council meeting because the encounter between plaintiff and Munkers took place after – not during – that meeting. Munkers Decl. 2. The only other evidence regarding plaintiff's behavior at city council meetings is that plaintiff had, on prior occasions, shaken his head or made disapproving facial expressions when others were speaking. Vohs Decl. 2. These types of gestures or facial expressions are not sufficient to support removal absent some showing that they were actually disruptive. *See Norse*, 629 F.3d at 970, *citing Norse v. City of Santa Cruz*, 118 Fed.Appx. 177 (9th Cir. 2004) ("*Norse I*") (whether plaintiff's "sich heil" gesture was disruptive and therefore his removal from a city council meeting was proper was a question for the trier of fact to decide).

Defendants have not argued that plaintiff's expressions were disruptive on the occasions Vohs referenced.  Such argument would have no merit as plaintiff was not removed, or even reprimanded, on those occasions. The record as a whole suggests that plaintiff's exclusion was justified, at most, on the basis that members of the City Council were concerned that plaintiff would be disruptive if he were allowed to stay. Such a concern, without more, cannot justify removal. *See Tinker*, 393 U.S. at 508; *Norse*, 629 F.3d at 976 .

 The record reveals a dispute of fact regarding Cook's statements to plaintiff about charging plaintiff with trespass should he attend the meeting.  Cook states that he informed plaintiff that plaintiff was subject to arrest if he did not leave the meeting. Whether plaintiff was merely warned, or whether he was in fact excluded, is a question for the jury. Accordingly, a genuine issue of material  fact exists as to whether plaintiff's First Amendment rights were violated.  Thus, the evidence is sufficient to raise questions of fact regarding a First Amendment violation by some but not all of the named defendants.

(1) Defendants Cook and Vohs

The record reflects that Cook and Vohs may have violated plaintiff's First Amendment rights.  Plaintiff stated that when he sat down for the October 27 meeting, Munkers and Vohs left the room simultaneously.  Osborne Dep. 31:13-20.  He further stated that they were gone for several minutes, and that they returned with Cook immediately prior to the conversation between Cook and plaintiff. *Id.*  Cook contends that Vohs instructed Cook to "see if [plaintiff] would voluntarily agree to leave." Cook Decl. 2.  Vohs states that he merely asked  Cook to "talk to [plaintiff] and make sure his behavior did not continue." Vohs Decl. 2.  A dispute of fact exists as

to whether Cook asked plaintiff not to attend the meeting under threat of arrest, and therefore whether he violated plaintiff's First Amendment rights, as well as whether Vohs instructed him to take action to exclude plaintiff. It is clear that Vohs had a conversation with Cook before the one that took place between Cook and plaintiff. A jury could conclude that these defendants were responsible for the alleged decision to exclude plaintiff from the meeting.

(2) Defendants Hoke, LaFollette, and Munkers

Conversely, the record does not reveal any evidence that Hoke or LaFollette violated plaintiff's First Amendment rights. Hoke declared that he did not learn of the conversation between Cook and plaintiff until after it took place. Hoke Decl. 2. LaFollette declared that he knew Cook would be talking to plaintiff about leaving the meeting; however, LaFollette and Hoke deny that either of them was a party to a conversation in which they agreed to remove plaintiff. *See* Hoke Decl. 2; LaFollette Decl. 2. Plaintiff fails to provide any evidence to dispute the substance of these declarations. Although plaintiff alludes to an agreement among defendants that he should be excluded from the meeting, *see* Pl.'s Compl. ¶¶ 12-16, this bare assertion is not sufficient to prevent summary judgment for Hoke and LaFollette.

Similarly, the evidence does not support any participation by Munkers in a decision to exclude plaintiff from the meeting. Munkers admits that he had a discussion with Vohs about the incident in which plaintiff called Munkers a "low life." Munkers Decl. at 3. Munkers states that he did not speak to Cook, and that he was not aware of the content of the conversation between Cook and plaintiff until "much later." Munkers Decl. at 3. Plaintiff states that he only "assumed" that Munkers did not want plaintiff at the city council meeting. Osborne Dep. 48:9-14.

Page 12 - FINDINGS AND RECOMMENDATION

Accordingly, defendants' motion for summary judgment as to plaintiff's claim for a First Amendment violation should be granted with respect to defendants Hoke, LaFollette, and Munkers and denied with respect to defendants Cook and Vohs.

*2. Fourteenth Amendment Equal Protection Violation*

Plaintiff alleges that defendants violated the Equal Protection Clause of the Fourteenth Amendment by intentionally treating him differently from other similarly situated members of the community who were present at the city council meeting. Pl.'s Mem. Opp. Summ. J. 11. However, the facts do not support an equal protection violation.

The Fourteenth Amendment "ensures that 'all persons similarly situated should be treated alike.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *reh'g denied*, 395 F.3d 1062 (9th Cir. 2005) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). Where, as here, "an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). Discrimination against a "class of one" may constitute a Fourteenth Amendment violation "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook*, 528 U.S. at 564 (citations omitted); *see also Nurre v. Whitehead*, 580 F.3d 1087, 1099 (9th Cir. 1999). Plaintiff carries the burden in establishing these elements. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

In determining whether challenged state action rests upon a rational basis, the court applies a "very lenient" standard. *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1156 (9th Cir. 2004). As such, governmental action only fails rational basis scrutiny if no sound reason for the action can be hypothesized. *Board of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 367 (2001); *see also Merrifield v. Lockyer*, 547 F.3d 978, 989 (9th Cir. 2008) (state action survives rational basis review if "there is any conceivable state of facts that could provide a rational basis" for the challenged action). Further, the "class of one" theory has been carefully circumscribed. *See Engquist v. Oregon Dep't. of Agric.*, 478 F.3d 985, 993-96 (9th Cir. 2007), *aff'd*, 553 U.S. 591 (2008) (declining to extend the "class of one" theory to the employment context). Courts are cautious when expanding the scope of cases constituting "class of one" violations because "unless constrained, the class-of-one theory of equal protection claim could provide a federal cause of action for review of almost every executive or administrative government decision." *Id*. at 993 (citing *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004)). The parties have not cited to, and this Court is not aware of, any cases in which a "class of one" theory has been applied in this context.

As discussed previously, the record supports a finding that at least one of the defendants may have required plaintiff to leave the city council meeting, thereby treating plaintiff differently from other similarly situated individuals who were permitted to stay. Accordingly, this Court must apply rational basis review to determine whether defendants violated the Equal Protection Clause.

Plaintiff does not address whether defendants lacked a rational basis for the difference in treatment. Plaintiff merely states in a conclusory manner: "Apparently, Mayor Vohs felt he

Page 14 - FINDINGS AND RECOMMENDATION

needed to single plaintiff out during the next meeting and inform him that post-meeting criticisms of City Manager Munkers is inappropriate . . . This is precisely the pre-textual [sic] rational [sic] for rule enforcement that the court's equal protection decisions forbid." Pl.'s Mem in Opp. Summ. J. 12.  However, "the State need not articulate its reasoning at the moment a particular decision is made." *Garret*, 531 U.S. at 367.  Therefore, the fact that plaintiff may have been unclear as to why defendants chose a particular course of action does not establish that their motives are "pretextual." *Id.*

Defendants argue that a legitimate interest motivated their decision to treat plaintiff differently from similarly situated individuals.  Specifically, defendants assert that the decision to talk to plaintiff about leaving the meeting was motivated by disruptive behavior he displayed at several previous meetings.  Vohs Decl. 3.  Defendants further contend that they were concerned plaintiff's behavior would escalate. *Id.*  Plaintiff admits to having made the comments referenced by defendants.  Osborne Dep. 26:18-20.  Thus, even viewing all inferences in a light most favorable to plaintiff, this Court is unable to conclude that no sound reason existed for the defendants' alleged action.  It is reasonable that defendants would want their public meetings to be conducted in an orderly fashion and would seek to prevent individuals from disrupting those meetings. Thus, I find that defendants' actions were rationally related to a legitimate interest. Accordingly, defendants' motion for summary judgment should be granted as to plaintiff's claim for a Fourteenth Amendment equal protection violation.

///

///

Page 15 - FINDINGS AND RECOMMENDATION

*5. Fourth Amendment Unreasonable Seizure*

Plaintiff alleges that when Cook signaled him from the meeting room into the foyer and advised him not to stay in the meeting that a seizure took place.  Pl.'s Mem. Opp. Summ. J. 11. However, the facts in the record before the Court do not support a Fourth Amendment violation.

An individual is not seized unless he reasonably perceives a restraint on his movement. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980) ("We adhere to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained").  The test for whether such restraint has taken place is if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 554.  The Court in *Mendenhall* found that no Fourth Amendment violation occurred when two DEA agents questioned a woman about narcotics in an airport and then performed a consensual search.  *Id.* at 555.  The Court emphasized the existence of and need for voluntary police encounters:

> [C]haracterizing every street encounter between a citizen and the police as a "seizure," while not enhancing any interest secured by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices.

*Id.* at 554.  *See also Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("[The Court's] cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions.  So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required") (internal citation omitted).

Construing the facts favorably to plaintiff, the evidence shows that Cook made a hand signal with the intent to convey to plaintiff that he should step out of the room and into the foyer. Osborne Dep. 16:11-14. When plaintiff accompanied Cook into the foyer, Cook allegedly instructed plaintiff that he would be subject to arrest if he re-entered the city council meeting. *Id.* at 17:13-21.  Plaintiff re-entered the room briefly to pick up his folder before leaving the building. *Id.* at 17:22.

The conversation between Cook and plaintiff was not an unlawful seizure.  The conversation was a regular encounter between a citizen and a police officer.  The mere fact that defendant Cook was wearing his badge when he expressed a desire to speak to plaintiff does not transform the encounter into a seizure.  *See Mendenhall*, 446 U.S. at 555.  Morevoer, the nature of the conversation – which consisted of an explanation of why plaintiff was not welcome at the meeting and did not include questions directed at plaintiff – was not sufficient to create a reasonable belief that plaintiff was not free to terminate the encounter and leave.  *See Bostick*, 501 U.S. at 434.

The conversation also was not transformed into a seizure at the point when Cook allegedly informed plaintiff that he could not attend the meeting. Accepting plaintiff's version of the facts, he is correct that his "liberty *to attend the public meeting* . . . was . . . restrained." Pl.'s Mem. Opp. Summ. J. 11 (emphasis added).  However, that is not the applicable test.  A seizure requires a reasonable belief that the seized person was not free to leave.  *Mendenhall*, 446 U.S. at 553.  Here, plaintiff remained free to leave; he was just not permitted to remain in the meeting. Therefore,

defendants' motion for summary judgment should be granted as to plaintiff's claim for a Fourth

Amendment unreasonable seizure.

### B. Municipal Liability – Monell Claim

Plaintiff's complaint alleges that "defendants City and its Police Department negligently

trained Cook." Pl.'s Compl. ¶ 34 (at 7). Plaintiff asserts the City is liable for its failure to

adequately train its employee, Police Chief Cook. Plaintiff also argues that Vohs, a City official,

instructed Cook to exclude plaintiff.

It is well-settled that a city may not be held vicariously liable for the unconstitutional acts

of its employees under the theory of *respondeat superior*. *Monell*, 436 U.S. at 691. To establish

municipal liability in a §1983 claim, the plaintiff must demonstrate that "execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. Interpreting *Monell*,

the Ninth Circuit articulated three theories of municipal liability:

> First, the plaintiff may prove that a city employee committed the alleged
> constitutional violation pursuant to a formal governmental policy or a
> "longstanding practice or custom which constitutes the 'standard operating
> procedure' of the local governmental entity." Second, the plaintiff may establish
> that the individual who committed the constitutional tort was an official with "final
> policy-making authority" and that the challenged action itself thus constituted an
> act of official governmental policy. Whether a particular official has final policy-
> making authority is a question of state law. Third, the plaintiff may prove that an
> official with final policy-making authority ratified a subordinate's unconstitutional
> decision or action and the basis for it.

*Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (internal citations omitted).

Plaintiff contends that the City "failed to train Chief Cook in plaintiff's public meeting law

and First Amendment rights" and "[n]ot only were the City of Burns policymakers aware that

Chief Cooks [sic] actions would violate plaintiff's rights, they instructed him to violate those rights." Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J. at 13.

Plaintiff argues that the City's failure to train Cook and their instructions to him regarding plaintiff's exclusion from the city council meeting reveal "deliberate indifference" to plaintiff's constitutional rights. Plaintiff is correct that, in limited circumstances, negligent training amounting to "deliberate indifference" can support municipal liability on a "practice or custom" theory. *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). However, plaintiff has introduced no evidence to support a negligent training claim. Hence, this Court rejects plaintiff's theory of municipal liability based on a negligent training theory.

Nor does the record support the theory that the City ratified a decision made by Cook to exclude plaintiff. Despite plaintiff's allegations that city council members "voted" to exclude him from the meeting, Pl.'s Compl. ¶ 11, there is no evidence that the City Council nor any other policymakers ratified a decision to remove plaintiff from the October 27 meeting.

The only question that remains is whether the decision to exclude plaintiff took place pursuant to an official policymaker's authority. For reasons set forth below, that theory also fails to support municipal liability. The city officials who may have participated in the decision to exclude plaintiff from the city council meeting are Mayor Vohs and City Manager Munkers. Vohs Decl. at 1. Vohs admits to having a conference with Cook prior to the October 27 meeting but denies having asked Cook to exclude plaintiff from the meeting. *Id*. at 2. Vohs further states that the decision to ask Cook to speak to plaintiff was his decision alone and only for the purpose to "insure Mr. Osborne knew his behavior could draw public attention if it did not cease." *Id.* at 3.

Page 19 - FINDINGS AND RECOMMENDATION

Munkers denies having any conversation with Cook prior to the meeting.  Munkers Decl. at 3.

Cook stated that his only conversation before the meeting was with Mayor Vohs.  Cook Decl. at 3.

Whether Vohs acted as a final policymaker in allegedly directing that plaintiff be excluded

from the meeting presents a close question.  Even where the evidence suggests neither an express

policy nor a policy that can be inferred from a pattern of behavior, a single action may still

constitute policy if undertaken by an official with "final authority to establish municipal policy

with respect to the action ordered." *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986). "We hold

that municipal liability under § 1983 attaches where – and only where – a deliberate choice to

follow a course of action is made among various alternatives by the official or officials

responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483.

Whether an official has final policymaking authority is a question of state law to be resolved by

the trial court.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  The trial court must

review the "relevant legal materials, including state and local positive law, as well as 'custom or

usage' having the force of law."  *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124

n.1 (1988)).

Whether state or local law vests an official with final policymaking authority turns on the

finality of that official's authority: "the authority to make municipal policy is necessarily the

authority to make final policy." *Praprotnik*, 485 U.S. at 127.  *Prapotnik* explained two

characteristics that preclude a finding of final policymaking authority:

> When an official's discretionary decisions are constrained by policies not
> of that official's making, those policies, rather than the subordinate's departures
> from them, are the act of the municipality. Similarly, when a subordinate's
> decision is subject to review by the municipality's authorized policymakers, they

have retained the authority to measure the official's conduct for conformance with their policies.

*Id.*

Here, the policymaking authority for the City is found in Burns Ordinance 9-801 §6. Vohs Decl. Ex. 1. Ordinance §6.5 provides that the mayor[6] may direct the acting peace officer to remove disruptive individuals. *Id.* Thus, the applicable law granted Vohs authority to remove a disruptive individual. This authority, however, is not final because it is subject both to constraints and to review.

The Ordinance provision that confers authority to remove a disruptive individual provides clear guidance as to the limits of that authority. Section 6.4 specifies that only disruptive conduct or certain types of combative remarks will justify removal. More importantly, removal is authorized only after "fair warning."[7] Here, Vohs departed from the policy by removing plaintiff

---

[6] §6.5 uses the term "Presiding Officer." The Burns City Ordinances define the mayor as the presiding officer. Ordinances §2.4.

[7] Baker's Ordinance § 6.5 states: "Any person who makes threatening, personal, or impertinent remarks, or who becomes unreasonably disruptive or [sic] while addressing the Council or attending a Council meeting, or interferes with the conduct of the meeting in violation of these rules, may be removed from the room, after fair warning, if the Presiding Officer so directs."

The comparable provision that survived a constitutional challenge in *Norwalk* stated:
"Each person who addresses the Council shall not make personal, impertinent, slanderous or profane remarks to any member of the Council, staff or general public. Any person who makes such remarks, or who utters loud, threatening, personal or abusive language, or engages in any other disorderly conduct which disrupts, disturbs or otherwise impedes the orderly conduct of any Council meeting shall, at the discretion of the presiding officer or a majority of the Council, be barred from further audience before the Council during that meeting . . . The presiding officer shall request that a person who is breaching the rules of decorum be orderly and silent. If, after receiving a warning from the presiding officer, a person persists in disturbing the meeting, the presiding officer shall order him to leave the Council meeting." *Norwalk*, 900 F.2d at 1424.

Page 21 - FINDINGS AND RECOMMENDATION

from a meeting he did not disrupt (i.e., the October 27 meeting) instead of simply warning him not

to disrupt the meeting.  The City's ordinance constitutes the City's official policy as a matter of

law.  Any action taken outside of the constraints provided for in the policy cannot be attributed to

the City.  *See Prapotnik,* 485 U.S. at 127.  In addition to the constraints the City's Ordinances

place on the Mayor's authority, the Ordinances also provide a procedure for review.  Although the

procedure is not detailed, it is sufficient to defeat a claim that defendant Vohs's authority to

exclude plaintiff was final. Burns Ordinance 9-801 § 1.1 states that "these rules" - which

encompass the removal provision discussed in the previous section - "apply equally to the Mayor

and Councilors."  Section 7 then provides as follows:

> "The Council has the inherent right to make and enforce its own rules and to
> ensure compliance with rules . . . Councilors who repeatedly violate these rules
> may be reprimanded or formally censured by the Council . . . " § 7.1;
>  "To enforce its inherent authority, the Council has the right to investigate the
> actions of any Councilor . . . " § 7.2; and
>  "[i]f the Mayor is the individual whose actions are being challenged, then the
> matter should be referred to the Council President." § 7.4.

Taken together, these provisions establish that the City Council may investigate violations of its

rules, including the removal provision, and that the subject of investigation may include violations

by the Mayor. Thus, if the Council perceived that defendant Vohs violated the constraints of the

removal provision when he allegedly ordered plaintiff's removal, the City Council was

empowered to investigate the decision and sanction Vohs accordingly.

This process is sufficient to conclude that Vohs was not a final policymaker regarding

removal of an individual from city council meetings.  Although the provisions cited above neither

specify particular investigative procedures nor provide a specific method by which plaintiff could

have obtained a review of the decision, the law does not require that much.  The simple fact that a decision is subject to review is sufficient to defeat a claim of finality, regardless of who has the authority to initiate the review.  *See Delia v. City of Rialto*, 621 F.3d 1069, 1082 (9th Cir. 2010) (fire chief was not a policymaker because the city's ordinance stated that his decision was subject to review and approval by the city council).

Defendant Vohs's authority in any area connected with the alleged removal of plaintiff from the meeting was subject to constraint, and because any departure from this constraint was subject to review by the City Council, defendant Vohs was not acting as a final policymaker when he allegedly removed plaintiff from the October 27 meeting. Therefore, municipal liability based on Vohs's actions fails and the City's motion for summary judgment should be granted.

## II. State Law Claims: Open Meetings Law and Statutory Tort

Plaintiff raises two state law claims. The first alleges violations of the Open Meetings Law, Or. Rev. Stat. §§ 192.610 *et seq*. The second alleges a statutory tort arising from violations of three criminal statutes: Or. Rev. Stat. §§ 162.235 (Interference with Government Administration), 162.405 (Official Misconduct in the Second Degree), and 162.415 (Official Misconduct in the First Degree).

///

///

///

///

Page 23 - FINDINGS AND RECOMMENDATION

A. Open Meetings Law Violation[8]

Plaintiff seeks equitable relief under Or. Rev. Stat. §§ 192.610 *et seq.*, alleging a violation of the Open Meetings Law and requesting the Court void any decisions made during the October 27 meeting.  Oregon law provides that any person affected by a decision made in violation of the Open Meetings provisions may request that the decision be voided. Or. Rev. Stat. § 192.680(2). Oregon courts have construed the "affected by" language broadly.  *See Students for Ethical Treatment of Animals  v. Inst. Animal Care and Use Comm. of Univ. of Oregon*, 113 Or.App. 523, 526-27, 833 P.2d 337 (1992).  However, if a plaintiff has not been affected by a decision made in violation of the Open Meetings Law, he or she lacks standing to sue under the statute.  *Harris v. Nordquist*, 96 Or.App. 19, 22, 717 P.2d 637 (1989).  Plaintiff testified that he is unaware of any decisions made during the October 27 meeting that affected him and that he has no understanding of the decisions he has asked to be voided.  Osborne Dep. 38:23-25.  This Court's review of the evidence also fails to reveal any decisions from the October 27 meeting that may have affected plaintiff.  The meeting's minutes reveal that two votes took place.  One vote permitted adoption of the Cemetery Committee's recommendations pertaining to the town's cemetery.  Minutes 3.  The other vote was a "management decision" to validate the City Manager's authority to proceed with a decision regarding an applicant for the position of airport manager.  *Id.* at 2.  Plaintiff has

---

[8] This case was originally filed in Harney County Circuit Court, the appropriate forum for a claim of violations of the Oregon Open Meetings Law.  This court may exercise supplemental jurisdiction over such a claim even though the statute only authorizes complaints to be filed in Oregon Circuit Court.  A state may not limit federal jurisdiction in a case that is properly brought.  *See Duffy v. Sarault*, 702 F.Supp. 387, 394 (D.R.I. 1988), *aff'd* 892 F.2d 139, 147 (1st Cir. 1989).

offered no evidence that these decisions affected him in any way.   Therefore, plaintiff lacks

standing to bring an Open Meetings Law claim.

　Accordingly, defendants' motion for summary judgment on this claim should be granted.

　B. Statutory Tort[9]

　Plaintiff's second claim alleges statutory liability based on three separate criminal statutes:

Or. Rev. Stat. §§ 162.235 (Obstruction of Governmental or Judicial Administration), 162.405

(Official Misconduct in the Second Degree), and 162.415 (Official Misconduct in the First

Degree).   Pl.'s Compl. 6.

　In general, criminal statutes such as Or. Rev. Stat. §§ 162.235, 162.405, and 162.415 do

not create private rights of action and are therefore unenforceable through a civil action.   *Ellis v.*

*City of San Diego*, 176 F.3d 1183, 1190 (9th Cir. 1999); *Winn v. Fly*, 2008 WL 570958 at *5 (D.

Or. Feb. 28, 2008); *Stacey v. Hascall*, 2010 WL 1335067 at *2 (D. Or. March 31, 2010); *see also*

*Pre-Hosp. Med. Serv. v. Malheur Cnty.*, *by and through Malheur Cnty. Court*, 134 Or.App. 481,

497 n. 21, 896 P.2d 585, 594.

　Plaintiff relies on two cases in which the Oregon Supreme Court has inferred a private

cause of action from a silent statute.   In *Scovill by and through Hubbard v. City of Astoria*, the

court found an implied civil action in a statute that imposed a duty on police officers to take

dangerously incapacitated people to treatment facilities.   324 Or. 159, 171, 921 P.2d 1312 (1996)

---

[9]Although plaintiff's and defendants' documents occasionally use the term negligence *per se*, this is distinct from the concept of statutory tort. A statutory tort claim asserts that a statute prescribes damages as a remedy for its violation. A negligence *per se* claim asserts that a statute establishes a standard of care, and it uses a violation of the statute to support a *prima facie* case for ordinary negligence. *Bellikka v. Green*, 762 P.2d 997, 1009 (1988). Here, negligence *per se* is inapplicable because plaintiff cites statutes requiring a *mens rea* of knowledge or intent; specifically, claims based on intentional violations of plaintiff's rights. *See* Pl.'s Compl. 6.

(interpreting Or. Rev. Stat. § 426.460(1) [renumbered 430.399(1) in 1995]).  Similarly, the court in *Nearing v. Weaver* reached the same conclusion regarding a statute that required police officers to arrest individuals believed to have violated restraining orders.  295 Or. 702, 711-12, 670 P.2d 137 (1983) (interpreting Or. Rev. Stat. § 133.310(3)).  Both cases interpreted public safety statutes that established duties to ascertainable plaintiffs likely to suffer a particular harm if the statutes were violated; neither of these cases pertain to criminal statutes.  Thus, plaintiff's reliance on these cases is misguided.  Plaintiff has not cited to any cases in this context in which a private remedy was inferred from a criminal statute and this Court declines to create a private right of action where the statute at issue does not purport to do so.  For the foregoing reasons, defendants' motion for summary judgment on plaintiff's claim for statutory tort should be granted.

## RECOMMENDATION

Defendants' motion for summary judgement (doc. 8) should be granted in favor of the City.  The individual defendants' motion for summary judgment (doc. 8) should be GRANTED, in part, and DENIED, in part, as follows: summary judgment should be GRANTED on the § 1983 claim based on the First Amendment to defendants Hoke, LaFollette, Munkers, and DENIED as to defendants Cook and Vohs; defendants' motion for summary judgment should be GRANTED on plaintiff's claims based on the Fourth and Fifth Amendments, Fourteenth Amendment procedural due process, substantive due process, equal protection, and conspiracy; defendants' motion for summary judgement should be GRANTED on plaintiff's state law claims of violation of the Open Meetings Law and statutory tort.

*///*

Page 26 - FINDINGS AND RECOMMENDATION

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due March 15, 2012.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 27th day of February, 2012.

<u>   /s/ Patricia Sullivan        </u>
Patricia Sullivan

United States Magistrate Judge